# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00315-CR

**Christopher Radon Rolig, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 9014158, HONORABLE CHARLES F. CAMPBELL JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Christopher Radon Rolig guilty of sexual assault and theft. Tex. Pen. Code Ann. '' 22.011, 31.03 (West 2003). The jury assessed punishment for the sexual assault at imprisonment for five years, while the court assessed punishment for the theft at imprisonment for two years. Imposition of sentence was suspended and Rolig was placed on community supervision. He now urges that the evidence is factually insufficient to sustain the convictions and that the court erred by overruling his motion for new trial. We will overrule these contentions and affirm the convictions.

**State=s Evidence**

Jane Smith testified that she and her friend Linda Freitag went to an Austin restaurant on the night of September 4, 1999.[1] They did not eat at the restaurant. Instead, they drank and danced with a group of people they met there. When the restaurant closed, Smith, Freitag, and the others decided to go to Polly Esther=s, a club in the downtown warehouse district. Freitag, who was driving, dropped Smith off in front of the club, then left to find a parking place. It was agreed that Freitag and the others would rejoin Smith in Polly Esther=s.

Smith testified that she entered Polly Esther=s and ordered a drink in the downstairs dance area. The club was crowded, and she began to dance with other patrons. She continued to drink and became intoxicated to the extent that she began Ablacking out.@ At some point, Rolig approached Smith, but she rebuffed him. Later, not having seen Freitag or the others in her party, Smith decided to leave Polly Esther=s and go to a nearby restaurant where she believed they might be. Before Smith reached the door of the club, Rolig walked up to her, told her she was drunk, grabbed her wallet from her hand, and walked away. Smith pursued Rolig across the crowded dance floor, demanding that he return her wallet. Rolig left the club by a side entrance and walked across the street to a parking lot, still followed by Smith. Smith told Rolig that her friends were waiting for her and she wanted her wallet. Rolig told Smith that her friends had

---

[1] AJane Smith@ is the pseudonym used in the indictment to identify the complaining witness. *See* Tex. Code Crim. Proc. Ann. art. 57.02 (West Supp. 2003).

left, that she was too drunk, and that he would take her home. Rolig took Smith by the elbow and began to walk her down the street, ostensibly to his car.

Rolig lived in a downtown apartment complex several blocks from Polly Esther=s. Smith=s next memory was of being in the courtyard of this complex. Rolig took Smith to his apartment. Her memory of what happened there was fragmentary. She remembered encountering a male friend of Rolig, who had two women with him. Although it crossed her mind to say something to them, she decided not to because the man was Rolig=s friend. When Smith and Rolig were alone in the apartment, he began to kiss and fondle her. Somehow, they ended up in the bedroom. Rolig pulled Smith=s dress above her head, touched her breasts, and penetrated her vagina with his fingers. He began to lick her genitals. She kicked and screamed. Rolig then forced his penis into Smith=s mouth.

Smith became nauseated and Rolig took her to the bathroom, where she vomited. After Smith vomited, Rolig left her alone in the bedroom. Smith used the telephone to call Freitag=s number and leave a message. In the message, Smith told Freitag that a man had taken her wallet and that she was in his apartment. She did not say that she had been abducted or assaulted. Smith asked Freitag to use her caller ID to find where Smith was. Smith next remembered sitting on the couch in Rolig=s living room and speaking to a man who was Rolig=s friend. She told the man she had been sick, but did not tell him that she had been sexually assaulted by Rolig.

The telephone rang several times. At first, Rolig picked up the receiver and immediately hung up. Finally, he answered and Smith heard him tell the caller, AShe=s not here. You have the wrong number.@ Smith testified that she thought then that she was going to die. She told Rolig that if he would

**3**

take her to her friend=s house to get her purse and keys, she would have sex with him. Rolig agreed to this and told Smith to call her friend and tell her that she was safe. With Rolig watching her, Smith called Freitag and told her that Aeverything was okay.@ Smith and Rolig then got into his car and, following her directions, he drove her to Freitag=s house. Smith told Rolig she would go inside to get her purse, but first he must return her wallet. After recovering her wallet and driver=s license, Smith ran into Freitag=s house.

Smith testified that she had been taking the drug Prozac for many years for depression. Doctors had warned her not to drink alcohol while taking the drug. She claimed that she was familiar with the effect of the drug and denied ever suffering from delusions. She acknowledged that in her original report to the police, she said that she had been Aforced into a car and almost raped.@

Linda Freitag testified that when she and her companions entered Polly Esther=s, they went to the upstairs balcony area. Freitag could see Smith on the dance floor below, but the club was crowded and noisy, and she could not get Smith=s attention. Later, when Freitag was ready to leave the club, Smith had disappeared. Concerned, Freitag attempted to find Smith, even having her paged. After a futile search for Smith, Freitag drove home. There, she discovered Smith=s telephone message. She repeatedly called the number shown on her caller ID. Someone would lift the receiver, but hang up without speaking. On about the sixth call, a man answered and Freitag asked to speak with Smith. The man told her she had the wrong number. Freitag then called the police to report what had happened. After about thirty minutes, Smith called Freitag and told her that Ahe@ was going to bring her to Freitag=s house. She described Smith=s manner of speaking as Aunusual.@ Freitag did not see the person who drove Smith to her house. Smith told her what had happened to her, and Freitag convinced her to call the police.

Amy Murphy and Tammy Ellis were residents of San Antonio who spent the 1999 Labor Day weekend in Austin. On the night of September 4, they went to Polly Esther=s where they met Rolig and his friend, Stephen St. James. They did not spend much time with Rolig, but danced for at least an hour with St. James. About 2:00 a.m., they left Polly Esther=s with St. James and went to a pizza restaurant. After eating, the women accepted St. James=s offer to drive them to the motel where they were staying. As it happened, St. James=s car was parked at Rolig=s apartment complex. They went to Rolig=s apartment, where St. James used the bathroom and got his keys. The two women stood inside the doorway. A young woman was sitting on the couch; Murphy described her as Aintoxicated or very out of it.@ Asked if she was all right, the woman told Murphy and Ellis that she was, but that she had been sick. Murphy asked Rolig to let the woman use his telephone, and he did so. Murphy, Ellis, and St. James were in Rolig=s apartment for only a few minutes.

Austin Police Officer Paula Belville took a videotaped statement from Rolig, a transcript of which was introduced in evidence. According to Rolig=s account, his encounter with Smith on the night in question began when she approached him at Polly Esther=s. They went outside to talk, and she agreed to go to his apartment. There, they sat on the couch but Smith became ill. Rolig took her to the bathroom, where she vomited. After they returned to the couch, St. James, Murphy, and Ellis arrived, then soon left. Rolig said he went outside to open the security gate for St. James. When he returned to his apartment, he and Smith went to the bedroom, sat on the edge of his bed, and began to kiss. She offered no resistence as he removed her clothing. When both were naked, Rolig=s telephone began to ring. Smith told him that the caller was probably her friend. Rolig admitted telling the caller that Smith was not there. When the phone

**5**

rang for the third time, Smith answered and told her friend that everything was fine and not to worry. She returned to Rolig=s bed and he briefly performed cunnilingus. Smith then told Rolig that she wanted to go home.

In his statement, Rolig denied penetrating Smith with his fingers or forcing her to fellate him. He also denied taking Smith=s wallet, but acknowledged having her driver=s license at some point during the evening.

**Defense Evidence**

Stephen St. James testified that he went to Polly Esther=s with Rolig on the night of September 4. There he met and befriended Murphy and Ellis. According to St. James, when he and the two women went to Rolig=s apartment complex, Rolig had to leave his apartment to open the security gate both when they arrived and when they departed. He heard the woman sitting on the couch say she had been sick but was feeling better. He said the woman did not appear to be injured, upset, or intoxicated.

Dr. Richard Coons, a psychiatrist, testified that he had examined Smith=s medical records but had not spoken to her. He said her records indicated that she had been diagnosed with depression, an Aalcohol issue,@ and cannabis dependence, and that she had been prescribed Prozac. The doctor testified that alcohol, depression, and Prozac can each have an adverse affect on memory. He added that the use of Prozac can result in the inability to distinguish dreams from reality, and cause mood swings, paranoia, and sexual promiscuity. (Later, during cross-examination, Coons acknowledged that Prozac had a list of side effects Aas long as your leg,@ that most of these side effects were experienced by only a small percentage of persons taking the drug, and that depending on the person, Prozac could either increase or decrease the

**6**

libido.) Coons said that Smith=s records also reflected a history of Abad relationships, bad experiences@ with others. He testified that such experiences can affect how a person perceives and remembers events.

Coons also discussed what he called Aconfabulation.@ According to the doctor, if a person experiences blackouts or memory loss as a result of intoxication, she may confabulate or Afill in the gaps in a sort of faulty memory.@ In response to a hypothetical question based on the facts of this case, Coons testified that in his opinion, the hypothetical woman might believe that she had been sexually assaulted when in fact she had not.

**Factual Sufficiency**

The indictment alleged three counts of sexual assault: penetration of Smith=s sexual organ by Rolig=s finger, penetration of her mouth by his penis, and contact of her sexual organ by his mouth. *Id.* ' 22.011(a)(1)(A), (B), (C). A fourth count alleged that Rolig stole Smith=s wallet and credit card from her person. *Id.* ' 31.03(a), (e)(4)(B). The jury acquitted Rolig of the first two counts of sexual assault, but found him guilty of the third sexual assault count and of theft. He does not challenge the legal sufficiency of the evidence, but urges that the evidence is factually insufficient to sustain the guilty verdicts.

A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury=s determination or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A verdict may be set aside for factual insufficiency only if a finding of guilt beyond a reasonable doubt is clearly

7

wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.CAustin 1992, pet. ref'd, untimely filed).

Rolig makes the following arguments in support of his contention that the evidence in this case is factually insufficient:

$ Smith was, by her own admission, intoxicated to the point that she was experiencing blackouts. Her ability to perceive and remember events was clearly impaired.

$ Smith=s perceptions were also distorted by her history of depression and bad relationships.

$ Smith=s trial testimony and her statements to the police contained inconsistencies that reflect her impaired memory and suggest that she was engaged in the confabulation described by Dr. Coons.

$ Smith made no outcry to Murphy and Ellis while they were in Rolig=s apartment. She told them she had been ill, but she did not tell them either that she had been abducted or sexually assaulted. She did not tell them that her wallet had been taken. Murphy persuaded Rolig to let Smith use his telephone, showing that there was someone in the apartment willing to help her if asked.

$ Smith made no outcry at Polly Esther=s when Rolig allegedly took her wallet, even though the club was crowded with people.

$ There was no physical evidence of an assault.

$ In her telephoned message to Freitag, which was introduced in evidence, Smith said that Rolig would not return her wallet, but did not say that he had abducted her. She did not say that she had been sexually assaulted.

$ Although it was undisputed that Rolig had Smith=s driver=s license at Polly Esther=s, Aif he did not intend to use it to lure her into his apartment, so that he could assault her, he necessarily lacked the requisite intent to deprive her of its use. In other words, if the evidence is factually insufficient as to the sexual assault count, it is insufficient to support the theft charge, too.@

> **$** Although Rolig admitted engaging in cunnilingus, no rational trier of fact could believe that this act was not consensual after finding him not guilty of the other two counts of sexual assault.

When reviewing the factual sufficiency of the evidence, we may not substantially intrude upon the jury=s role as the sole judge of the weight and credibility given to witness testimony. *Johnson*, 23 S.W.3d at 7 (citing *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996)). Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury=s determination concerning the weight to give contradictory testimonial evidence. *Id*. at 9. A decision is not manifestly unjust simply because the fact-finder resolved conflicting views of the evidence in the State=s favor. *Roise v. State*, 7 S.W.3d 225, 233 (Tex. App.CAustin 1999, pet. ref=d).

The evidence in this cause supports a number of alternative interpretations, some of them innocent. Nevertheless, the proof of guilt is not so obviously weak or so greatly outweighed by contrary proof as to compel the conclusion that it was manifestly unjust for the jury to find that Rolig stole Smith=s wallet and driver=s license and that he thereafter forcibly contacted her sexual organ with his mouth. The jury=s failure to find Rolig guilty of the first two counts of sexual assault does not alter this conclusion. As trier of fact, the jury was free to believe Rolig=s claim that he engaged in only the one sex act while at the same time believing Smith=s testimony that she was forced against her will to engage in that act.

Point of error one is overruled.

## Motion for New Trial

Rolig filed a motion for new trial alleging that the jury received other evidence after retiring to deliberate. *See* Tex. R. App. P. 21.3(f). The motion was supported by the affidavit of a defense investigator who interviewed juror Alice Cashman after the trial. She told him that during deliberations she told the other jurors that she had taken Prozac and that in her experience the drug "lowered a person=s sexual libido." At the hearing on the motion, Cashman testified that she told the other jurors "that I had been on Prozac and that it lowered my sexual libido." She said that she made this remark after another juror mentioned that he had been on Prozac for a month and had noticed that it decreased his sexual desire. Cashman did not remember if the foreman or any other member of the jury cautioned against discussing this subject. Cashman testified that her experience with Prozac did not become "a big topic of conversation," and it did not affect her verdict.[2]

---

[2] The State objected that the affidavit and Cashman=s testimony were inadmissible under Texas Rule of Evidence 606(b), which provides that a juror may not testify as to "any matter or statement occurring during the jury=s deliberations . . . as influencing any juror=s assent to or dissent from the verdict." The rule also proscribes the admission of a juror=s affidavit or statement for such a purpose. Tex. R. Evid. 606(b). The rule does permit a juror to testify whether "any outside influence was improperly brought to bear upon any juror." *Id.* The court overruled the State=s objection on the ground that, at least arguably, Cashman=s testimony concerned an "outside influence." The State did not file a cross-appeal challenging this ruling. *See* Tex. Code Crim. Proc. Ann. art. 44.01(c) (West

10

Supp. 2003). We express no opinion as to whether the testimony adduced at the new trial hearing was admissible under rule 606(b).

The jury foreman also testified. He said that after Cashman and the other juror made their remarks, "we quickly, as a group decided, hey, this may be out of bounds. So it was my recollection that we then — I put a question together and handed it to the bailiff and it came back that we were not allowed to talk about."[3] He testified that there was no further discussion of jurors' personal experiences with Prozac. He also testified that the jurors' comments regarding the effects of Prozac did not influence his verdict.

At the conclusion of the hearing, the district court stated that "it's pretty clear that some evidence got before the jury that shouldn't have got before the jury."[4] Nevertheless, the court overruled the motion for new trial, citing the jurors' testimony that they were not affected by the comments regarding the effects of Prozac and the foreman's testimony that the jury as a whole determined that the subject was "out

---

[3] Among several notes from the jury to the judge was one asking, "Is the jury permitted to give past examples of experiences that relate to the case? For example if a juror had some experience with people who have been raped, can they elaborate on and compare and contrast their experiences with the case?" The judge answered, "No."

[4] "Other evidence" means something not already disclosed to the jury at trial. 43A George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 41.63 (2d ed. 2001). In light of Dr. Coons's testimony that Prozac could affect the libido by either increasing or decreasing the user's sexual desire, it is debatable whether the jurors' comments regarding their own experiences with the drug were, in fact, "other evidence."

of bounds.@ We review the court=s ruling for an abuse of discretion. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

A new trial must be granted pursuant to rule 21.3(f) if other evidence detrimental to the accused was received by the jury. *Garza v. State*, 630 S.W.2d 272, 274 (Tex. Crim. App. 1981); *Carroll v. State*, 990 S.W.2d 761, 762 (Tex. App.CAustin 1999, no pet.).[5] A passing remark or mere mention of a matter does not constitute Areceipt@ of other evidence. *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex. Crim. App. 1978); *Avalos v. State*, 850 S.W.2d 781, 783 (Tex. App.CHouston [14th Dist.] 1993, no pet.). How the jury responded to the interjection of other evidence is also important in assessing whether it was Areceived@ by the jury. AIf the other evidence was met with an admonition that it is improper for the jury to consider it and it was not further discussed, then that event will ordinarily not be considered a sufficiently serious breach of propriety to require a new trial.@ 43A George E. Dix and Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 41.63 (2d ed. 2001) (footnote omitted) (collecting cases). As the district court noted, the foreman testified that the jurors determined that it was improper to consider their colleagues= experiences with Prozac and there was no further discussion of the subject. Cashman did not remember this, but she did recall that the subject was not Aa big topic@ during deliberations. On this record, we conclude that the district court did not abuse its discretion by determining that the jury did not receive other evidence detrimental to Rolig. Point of error two is overruled.

---

[5] *Garza* construed former code of criminal procedure article 40.03(7), which was substantially identical to rule 21.3(f). *See* Act of May 28, 1973, 63rd Leg., R.S., ch. 426, art. 3, ' 5, 1973 Tex. Gen. Laws 1122, 1128 (Tex. Code Crim. Proc. Ann. art. 40.03(7), since repealed).

The district court signed two judgments of conviction, one for each count of the indictment on which Rolig was convicted. The judgments are affirmed.


Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:  May 8, 2003

Do Not Publish